**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2835
_____

UNITED STATES OF AMERICA

v.

DOUGLAS CANTEY,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-504)
District Judge:  Hon. Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
June 28, 2012

Before:  SLOVITER, CHAGARES, and JORDAN, *Circuit Judges*.

(Opinion Filed:  June 29, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    While on supervised release for committing wire fraud, Douglas Cantey was

arrested and charged with credit card fraud and violating the terms of his supervised

release.  Cantey pled guilty to those charges in the United States District Court for the

District of New Jersey and was sentenced to time served for the credit card fraud and 24

months' imprisonment for the violation of his supervised release. He appeals, arguing that there were procedural errors in the sentencing, that the sentence was substantively unreasonable, and that the District Court denied his right to allocution. Because the sentence imposed was procedurally and substantively reasonable and because Cantey was not denied the right to allocute, we will affirm.

## I.      Background

Cantey's criminal activity dates back to the early Nineties when he was convicted of credit card-related crimes nine times. In 2004, continuing his criminal conduct, Cantey engaged in a scheme whereby he and his co-conspirators made unauthorized wire transfers through Western Union in order to steal more than $400,000. Cantey was arrested and pled guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343 in the United States District Court for the Southern District of New York. In April 2006, he was sentenced to 57 months' imprisonment and three years' supervised release.

After his term of imprisonment ended in December 2008, Cantey's supervised release was transferred to the District of New Jersey and he promptly returned to his criminal activities. From January 2009 until his arrest in June 2009, Cantey fraudulently opened lines of credit using the identifying information of deceased or elderly victims, and he used those fraudulently-opened accounts to purchase various items.

Cantey was arrested in June 2009 and charged with one count of unauthorized access of a device with the intent to defraud, 18 U.S.C. § 1029(a)(2),[1] and with violating his supervised release. Cantey pled guilty to both counts in February 2010 in the United States District Court for the District of New Jersey.

Before his sentencing hearing in June 2011, Cantey offered to provide information to the government about Abdul Williams, a fellow inmate who was awaiting trial on a firearms charge. According to Cantey, Williams had conspired with attorney Clifford Minor and another individual, Jamal Muhammad, for Muhammad to falsely confess to Williams's firearms charge. Cantey's cooperation in revealing that scheme led to the arrest of all three individuals and they later pled guilty to witness bribery charges.

At his sentencing hearing, the Court began by noting that it had considered the government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1,[2] the defendant's submission requesting a sentence of time served for both counts, and a personal letter from Cantey to the Court. The Court heard from Cantey's attorney, who urged the Court to give "a sentence of time served both for the substantive offense and for the violation sentence for [Cantey's] probation violation … ." (App. at 59a.) The

---

[1] 18 U.S.C. § 1029(a)(2), (c) provides that "[w]hoever … knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period … shall, if the offense affects interstate or foreign commerce, be punished … [with] a fine … or imprisonment for not more than 10 years, or both … ."

[2] U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

3

defense cited Cantey's cooperation, his personal history, his prospects for rehabilitation, and his gambling addiction and medical condition[3] as the bases for its request.

Following the defense's arguments, the Court asked Cantey if he would like to say anything. Cantey said "[w]ell, first I just want to apologize," but he was, for some reason, unable to finish his comments. (App. at 64a.) The government stated that it did not object to the defense's proposed sentence, noting that, in its view, "a time served sentence would [not be] unreasonable." (App. at 65a.) The Court then returned to Cantey, who said "I first want to apologize for being here and to any of the victims who were compromised [by] my actions. And I just pray that your Honor's merciful." (App. at 65a.)

The Court then considered various factors before sentencing Cantey. The Court took into consideration the government's § 5K1.1 motion. In considering the factors enumerated in 18 U.S.C. § 3553(a), the Court recognized its objective in crafting a sentence that "would be sufficient but not greater than necessary to reflect the seriousness" of Cantey's crimes. (App. at 67a.) The Court noted Cantey's long criminal history and that he had essentially committed the same crimes of identity theft and credit card fraud many times since 1991. The Court also noted that Cantey was out of prison for only a month before resuming his criminal activity. In considering Cantey's gambling addiction, the Court stated that it was unsure to what extent that alleged addiction played a role in his crimes. With respect to the unauthorized access conviction,

---

[3] During the sentencing hearing, defense counsel referred to a then-undiagnosed skin condition afflicting Cantey.

4

the Court granted the government's motion for a downward departure, reducing Cantey's offense level from 15 to 10 because of his cooperation, and sentenced him to time served based on his time in prison since June 2009.

The Court then sentenced Cantey to 24 months' imprisonment for the supervised release violation. In crafting the sentence for that violation, the Court did not believe that time served was appropriate given Cantey's extensive criminal history and his return to criminal activity only a month after being released from prison. The Court stated that while it had considered the defendant's cooperation, it was not sufficient to erase his misconduct and, in particular, his rapid return to crime. After imposing the sentence, the Court allowed the defense to again articulate the reasons why a time-served sentence was appropriate for the supervised release violation. The defense emphasized Cantey's cooperation, but the Court responded that it had considered the issue and found his sentence to be appropriate even in light of that cooperation. Cantey filed this timely appeal.

## II.    Discussion[4]

Cantey argues on appeal that the sentence imposed was procedurally and substantively unreasonable. He also argues that the District Court denied his right to allocution. Both sets of argument are based on the premise that the sentencing hearings for the unauthorized access charge and the violation of supervised release were separate.

_____

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the procedural and substantive reasonableness of the sentence imposed by the District Court for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).

Cantey is fundamentally wrong, however, in viewing the sentencing hearing for the two convictions as being two distinct hearings. The Court held a single sentencing hearing for both the substantive offense and supervised release violation. The factual circumstances leading to those charges are the same. The defense opened its arguments at the sentencing hearing by making a request for time served on both counts and provided arguments to support that position (App. at 59a (asking the Court to sentence Cantey to "time served both for the substantive offense and for the [supervised release] violation")), and concluded its remarks by again making a request for time served on both counts. Because the unauthorized access charge and the sentencing violation involved the same conduct, the Court's analysis throughout the sentencing hearing was applicable to both charges.

Turning to the procedural reasonableness question, § 3553(a) provides for a number of factors to be considered in imposing a sentence, including the nature and circumstances of the offense, the characteristics of the defendant including his criminal history, the need for the sentence to reflect the seriousness of the offense and to deter future criminal conduct, the kinds of sentences available and the sentencing guidelines, the need to avoid unwarranted disparities between sentences for similar crimes, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a). While a district court must give "meaningful consideration to the [§ 3553(a)] factors," *United States v. Grier*, 475 F.3d 556, 1569 (3d Cir. 2007), there was no procedural error here because the Court offered a thoughtful analysis of those factors during the sentencing hearing.

Cantey argues that the District Court did not consider a mitigating personal characteristic – his gambling addiction – in sentencing him, but the Court did consider that issue. (App. at 67a ("Now, I know you say that this is all as a result of a gambling addiction. I don't know if it is or it isn't. There's some part of the presentence report that said that that was just something that you were feigning to receive some type of consideration for some prior offense.").) Cantey also argues that the Court did not consider that he had already served over two years in jail at the time of sentencing, but again, the Court noted the time that he had already served. (App. at 70a ("I do recognize that you have been incarcerate[d] for a period of time.").) Finally, Cantey argues that the District Court did not consider his substantial cooperation and the risk of retaliation he faced as a result, but the District Court considered Cantey's cooperation in crafting the sentence. (App. at 74a ("While I certainly have taken into consideration your cooperation, I am of the opinion that the consecutive aspect of this violation is necessary because of the factual background, quite honestly. I mean you were released in December and started this offense to which you entered a plea of guilty in January."); App. at 66a ("[T]here was obviously a risk of safety involved as well, and potential danger to Mr. Cantey for cooperating, given the nature of the cooperation, given the nature of the individuals involved, given the nature of the offenses as well that were involved.").)

We also reject Cantey's contention that the sentence imposed by the District Court was substantively unreasonable. "Our substantive review requires us not to focus on one or two factors, but on the totality of the circumstances. … [and] the party challenging the

7

sentence has the burden of demonstrating unreasonableness." *Tomko*, 562 F.3d at 567.

Our inquiry in reviewing substantive reasonableness boils down to this:

> … absent any significant procedural error, we must give due deference to the district court's determination that the § 3553(a) factors, on a whole, justify the sentence. In other words, if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.

*Id*. at 568 (internal quotation marks and citations omitted).

Here we believe that, as discussed above, the District Court thoughtfully considered the § 3553(a) factors. The Court offered a persuasive rationale for imposing a 24-month sentence, focusing on Cantey's extensive criminal history and his rapid return to criminal activity following his release from prison.[5] Such facts provide a sound basis for the District Court's sentence. The Court considered defense counsel's arguments and even entertained additional defense argument asking for reconsideration of the sentence after it was announced. The Court assessed those additional arguments and again reached the same conclusion. The Court's carefully measured sentence was, in short, substantively reasonable.

Finally, Cantey argues that he was denied the right of allocution. We disagree. Prior to sentencing, a defendant has the right to make a statement to the Court and to present any information in mitigation of the sentence. Fed. R. Crim. P. 32(i)(4) ("Before imposing sentence, the court must ... address the defendant personally in order to permit

---

[5] Further, the sentence was in accord with the statutory maximum of 24 months' imprisonment, 18 U.S.C. § 3583(e)(3), and was within the guidelines range of 21 to 27 months' imprisonment, U.S.S.G. § 7B1.4(a).

the defendant to speak or present any information to mitigate the sentence."); *see United States v. Adams*, 252 F.3d 276, 279 (3d Cir. 2001) ("[T]he right of allocution [is] an important safeguard that should be strictly enforced according to its terms."). That right extends to hearings involving the revocation of supervised release. *United States v. Plotts*, 359 F.3d 247, 249 (3d Cir. 2004) ("We conclude that a criminal defendant's right of allocution extends to release revocation hearings."). Here, Cantey was offered an opportunity to address the Court, not once but twice, though the first was truncated. Cantey's argument again stems from the misconception that the Court held two separate sentencing hearings for the same conduct. Cantey made no subsequent request to address the Court following his first two allocutions that day but rather complains that he was not invited to allocute a third time. He had his say, however, and the District Court did not deny him the opportunity to allocute.

## III.    Conclusion

For the forgoing reasons, we will affirm the sentence imposed by the District Court.

9